UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1434

PAUL ANTHONY RANGOLAN,

Petitioner,

v.

MICHAEL B. MUKASEY, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued: October 28, 2008        Decided: December 3, 2008

Before MOTZ, GREGORY, and DUNCAN, Circuit Judges.

Dismissed by unpublished per curiam opinion.

**ARGUED:** Linda Anna Dominguez, L.A. DOMINGUEZ LAW, L.L.C.,
Baltimore, Maryland, for Petitioner. M. Jocelyn Lopez Wright,
UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration
Litigation, Washington, D.C., for Respondent. **ON BRIEF:**
Gregory G. Katsas, Assistant Attorney General, Civil Division,
Carol Federighi, Senior Litigation Counsel, Office of
Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Paul Rangolan, a citizen of Jamaica, petitions for review of an order of the Board of Immigration Appeals (BIA) denying his motion to reopen the BIA's order of removal. Because Rangolan has not raised a constitutional or legal question with respect to that order of denial, we dismiss the petition for lack of jurisdiction.

I.

In July 1987, the BIA granted Rangolan lawful permanent resident status in the United States; however, in December 1998, an immigration judge ordered his removal from this country as an aggravated felon. Three months later, Rangolan illegally reentered the United States. In June 2004, the Government arrested Rangolan and later convicted him of using, carrying, and possessing a firearm during a drug trafficking offense and of illegal reentry following removal for conviction of an aggravated felony.

When the Department of Homeland Security (DHS) took Rangolan into custody after he served his criminal sentence, he expressed fear of persecution or torture in Jamaica on account of his (homosexual) sexual orientation. An asylum officer conducted a "reasonable fear" interview pursuant to 8 C.F.R.

2

§ 208.31 (2008), and transferred the matter to an immigration judge (IJ) for a hearing.

At his hearing, Rangolan conceded his ineligibility for asylum because of his aggravated felony conviction, but he argued that if removed to Jamaica, the government would persecute and torture him because of his sexual orientation. He testified that when deported to Jamaica in January 1999, he had to move out of his brother's house because the neighbors, suspecting Rangolan was gay, threatened both him and his brother. Rangolan further explained that he returned to the United States shortly after an incident in which a crowd, yelling homosexual slurs, chased him and a friend, hit the friend on the head with a brick, and cut Rangolan with a broken bottle. Finally, Rangolan's sister testified at the immigration hearing that neighbors killed Rangolan's brother in July 1999 because of his relationship to Rangolan.

The IJ found Rangolan ineligible for withholding of removal under the asylum statute and the Convention Against Torture ("CAT") because he had been convicted of a particularly serious crime and because his prior crimes and his firearms collection make him a danger to the community. However, the IJ found Rangolan eligible for deferral of removal under CAT, reasoning that it was more likely than not that Rangolan would be subject to imprisonment and torture for homosexual acts if deported to

3

Jamaica.   In reaching this conclusion, the IJ cited the State Department's 2005 Country Report on Human Rights Practices in Jamaica, which noted that public demonstrations of physical intimacy between men was a crime punishable by imprisonment in Jamaica, that there had been a number of incidents of civilian violence against homosexuals that year, and that reports of physical abuse of homosexual prisoners continued.

On August 16, 2007, the BIA granted DHS's appeal, vacated the IJ's grant of CAT deferral, and ordered Rangolan removed to Jamaica.   The BIA found the IJ's conclusion that Rangolan would be tortured in Jamaica to be "based on a series of unsupported suppositions" and concluded it not more likely than not that "any torture the applicant may suffer in Jamaica would be by or at the acquiescence of the government."

Rangolan petitioned this court for review of the BIA's decision and sought a stay of removal.   The government opposed the stay and moved to dismiss the petition for lack of jurisdiction.   On October 23, 2007, over a dissent, we granted the motion to dismiss and denied the motion to stay.  Rangolan v. Mukasey, No. 07-1838 (4th Cir. Oct. 23, 2007).   We subsequently denied Rangolan's petition for rehearing and rehearing en banc.   Rangolan, No. 07-1838 (4th Cir. Nov. 21, 2007).   The Supreme Court denied Rangolan's application and re-application for a stay of removal, Rangolan v. Mukasey, 128

4

S. Ct. 1331 (2008), and his petition for certiorari, Rangolan v. Mukasey, 128 S. Ct. 2934 (2008).

On March 7, 2008, Rangolan moved to reopen his case with the BIA and to stay his removal during the pendency of its consideration of that motion. He claimed that "there is a critical change in circumstances and/or a denial of due process in his case." Rangolan based his argument primarily on an unpublished BIA decision issued December 18, 2007 in which the BIA reversed the decision of an IJ and determined that a homosexual Jamaican alien was eligible for statutory withholding of removal because of his sexual orientation. On March 31, 2008, the BIA denied as untimely Rangolan's motion to reopen explaining that an applicant must file a motion to reopen within 90 days after a BIA decision, in this case on or before November 14, 2007 -- 90 days following the BIA's August 16, 2007 decision ordering Rangolan's removal to Jamaica.

## II.

Rangolan moves for a stay of removal and seeks review of the BIA's denial of his motion to reopen as untimely. The government opposes this motion and moves for dismissal of Rangolan's petition, arguing that 8 U.S.C. § 1252(a)(2)(C) (2006) deprives us of jurisdiction to review Rangolan's petition.

5

Section 1252(a)(2)(C) provides in relevant part: "[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)." This statute generally deprives us of jurisdiction to review a final order of removal issued against an alien (like Rangolan) removable as an aggravated felon. But, as the Government concedes, pursuant to "the Real ID Act's addition of new Section 242(a)(2)(D) to the INA . . . the federal courts" retain jurisdiction to review such an order if the case presents a constitutional claim or a question of law. See 8 U.S.C. § 1252(a)(2)(D) (2006); see also Saintha v. Mukasey, 516 F.3d 243, 248 (4th Cir. 2008).

Admittedly, no statute explicitly permits us to review the BIA's denial of a motion to reopen. See Sarmadi v. INS, 121 F.3d 1319, 1321 (9th Cir. 1997); Patel v. Att'y Gen., 334 F.3d 1259, 1261 (11th Cir. 2003). However, we believe that implicit in our power to review a final BIA order is the power, in the appropriate case, to review the denial of a motion to reopen removal proceedings. See Stewart v. INS, 181 F.3d 587, 593 (4th Cir. 1999) (noting that the Fourth Circuit and our "sister circuits" "have traditionally interpreted 'final order of deportation' . . . to include a BIA order denying a motion to reopen"); see also Hanan v. Mukasey, 519 F.3d 760, 763 (8th Cir.

6

2008) (holding that the authority to review an order denying a motion to reopen is implicit in the grant of authority to review a final BIA order); Patel, 334 F.3d at 1261 (same); Sarmadi, 121 F.3d at 1321 (same); Chow v. INS, 113 F.3d 659, 664 (7th Cir. 1997) (same), abrogated on other grounds by LaGuerre v. Reno, 164 F.3d 1035 (7th Cir. 1998).[1]

Tellingly, Rangolan does not suggest any other jurisdictional basis permitting us to review the BIA's denial of a motion to reopen removal proceedings, and we can find none. Thus, the general power to review any "final order of removal" in § 1252(a)(1) provides a basis -- but our only basis -- to review a denial of a motion to reopen.

For criminal aliens, Section 1252(a)(2) expressly limits our power to review final orders of removal in § 1252(a)(1) to constitutional and legal questions, and thus necessarily restricts our review of a denial of a criminal alien's motion to reopen removal proceedings to constitutional and legal questions. Five courts of appeals that have considered this jurisdictional issue have reached the identical conclusion.

---

[1] Notably, not even the Government argues to the contrary. Moreover, in 1964, when the Ninth Circuit held that it did not have jurisdiction to review a BIA's denial of a motion to reopen, the Supreme Court reversed that decision in a one-sentence decision. See Giova v. Rosenburg, 379 U.S. 18 (1964). As a result, it seems clear that the courts of appeals retain jurisdiction to review motions to reopen removal proceedings despite the lack of an explicit statutory grant.

See, e.g., Hanan, 519 F.3d at 763; Cruz v. Att'y Gen., 452 F.3d 240, 246 (3d Cir. 2006); Patel, 334 F.3d at 1261-62; Sarmadi, 121 F.3d at 1321; Chow, 113 F.3d at 664; see also Pepaj v. Mukasey, 509 F.3d 725, 727-28 (6th Cir. 2007) (holding that the court lacked jurisdiction to review a denial of a motion to reopen by a criminal alien where petitioner raised only an issue of fact); Boakai v. Gonzales, 447 F.3d 1, 4 & n.5 (1st Cir. 2006) (same); Durant v. INS, 393 F.3d 113, 115-16 (2d Cir. 2004).[2]

In the case at hand, Rangolan presents no constitutional or legal question. Therefore, Rangolan's petition for review is

DISMISSED.

---

[2] We note that our decision in the case at hand does not in any way conflict with our recent holding in Obioha v. Gonzales, 431 F.3d 400 (4th Cir. 2005). There, we addressed 8 U.S.C. § 1252(a)(2)(B)(i) (2006), which limits judicial review of "any judgment regarding the granting of relief under" certain immigration law provisions. That statute, unlike § 1252(a)(2)(C), does not limit a court's jurisdiction to review a final order of removal and therefore in that case, we had no need to consider the relationship between a final order of removal and a denial of a motion to reopen.